United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to this week's session of the 11th Circuit. Judge Newsome, Judge Marcus and I truly appreciate Council's cooperation in doing our session virtually by Zoom this week. If we have any technical difficulties as we go along, please don't panic. Our tech staff will take care of it and we'll try to make sure that you get your full opportunity to make your argument. You'll notice that for those of you who may not be familiar that our timer, which you'll see on your screen has a color. It's green and that means you have time left in your argument, when it turns yellow, you'll have two minutes, and then when it turns red we asked you to quickly wrap up your remarks because your time has expired. Council before you begin your arguments, let me remind you that we have read your briefs, significant parts of the record and we're familiar with your cases, so we would encourage you to go directly into the heart of your arguments. I'll now call the first case, which is United States v. Proctor, number 1914323. Mr. Lewin, are you ready for the appellant? Thank you, Judge. Good morning. I am ready. You may proceed. May it please the court. Good morning. My name is Jordan Lewin. I represent the appellant, Lessie L. Proctor, on this appeal. I was also trial counsel in the matter below before the district court. Proctor and his girlfriend were indicted for a conspiracy to commit robbery and two substantive robbery acts that occurred in June of 2018 in South Florida. In addition, the jury heard evidence of four other substantive robbery acts that took place three after and one before the charge conspiracy and the charge crimes. Three of those were retail establishments in Illinois, Arkansas, and Mississippi, and one was a senior citizen in Pensacola, Florida, where she was carjacked. Upon capture, Proctor's co-defendant, his girlfriend, Anna Conan, made a statement to the police in which she explained her involvement in the crime, and she named Proctor as the person she committed the crimes with. During cross-examination, the defense showed that she had bias, motive to lie, and ultimately did in fact lie. The statements that Conan gave to the police were initially in the very early morning hours when she was arrested on the 14th or 15th in June in Mississippi in a field, and then later that afternoon in the hospital, the FBI come out and visit her. She admitted that her initial statement to the police contained bias, and the defense showed that she initially gave a false name. She did this to misdirect the police because she knew she had an open warrant out for her. She lied about the number of robberies she was involved in because she was trying to minimize her involvement. She indicated that this was the first time she ever broke the law substantively, but that wasn't true because she had been involved in intentional fraud in the past. And most importantly, she said that she acted in duress when she claimed that he made me do it, and he made me do it became a big part of the defense's theme to show this jury why Conan was an unreliable witness. She made me do it was contradicted by the idea that as we went through the substantive robberies during the course of the trial, we could see that Conan intentionally participated in conduct. Sometimes she was putting her hands in the till of a register after Proctor had already left. Sometimes she was sticking around and waiting for him when she was in a car by herself with keys in the ignition. And we were also able to show that with Miss Webb, the senior that was carjacked, she was the individual that was tearing the purse out of Miss Webb's hands and throwing her to the ground, which led to Miss Webb's injuries and Proctor didn't get involved in that. Ultimately, the main contradiction to the statement, he made me do it, was that she pled guilty. The defense never challenged who the he, the pronoun he was and he made me do it. It was always recognized that she was naming Proctor. The defense never challenged that she claimed to the police that she committed these crimes with Proctor. What we were able to show is that she was lying when she initially spoke to him. After the cross-examination was done, before redirects started, the government asked for permission to bring in a prior and consistent statement. Excuse me, prior consistent statement under 801 D1B. And now there's a sub one and two. At the time, the government argued that there was a recent fabrication claim of a motive for recent fabrication of lie. Ultimately, that the defense was saying because she took her plea, she now had a reason to name Proctor. So they wanted to bring in this prior statement where she brought in Proctor's name from the beginning. So, can I ask you a question just descriptively, factually, is that right? That you did seek to impeach Conan on the basis of the plea agreement? On the basis that the plea agreement contradicted the statement, he made me do it. Not on whether or not because she took a plea agreement, she was now naming the defendant for the first time and therefore this was a recent claim that she had committed the crime with my client. When she said he made me do it and she said she acted in duress, which would be an affirmative defense, every which way you look at that judge, that's contradicted by her voluntary plea of guilt before the district court judge. Where when she pleads guilty, she says, I knew what I was doing and I did it voluntarily. And for her to try and suggest that at any point, she was under the duress or that there was a power dynamic that was influencing her to act, it was contradicted by that plea. I take the record to suggest a more general sort of impeachment of her. You know, as I read it, you said, if you were the trial counsel, you said, so your plea agreement says you're going to cooperate and the person you're going to cooperate against is who? Les Proctor. Right. I mean, that sounds to me just sort of a general effort to impeach her on the basis that this plea agreement gives her a reason to be sort of contra Proctor. And so why, if that's if that was the implication, why isn't the prior consistent statement admissible under 801 D one B. Because it's not consistent in the sense that it's apples and oranges, the defense never suggested that she lied about saying it was Proctor at the beginning. So there's a lack of the consistency. And as far as this generalized, he made me do it. There's a distinction. I think this is maybe the most important thing for the court. I'm telling the jury, she's lying about who she did it with. I'm not telling the jury that she lied to the police about claiming it was Proctor. There's a distinction. And this idea that it's a recent fabrication is not part of the theory of the defense we're saying that she was lying at the beginning in the nature that she admitted these problems. The problem I have with that is that the trial judge makes an unambiguous finding of fact, the trial judge says that Conan's motive to fabricate would have arisen when she agreed to cooperate with the government, citing to Prieto. There's a there's a square finding so it seems to me, you've got to get over two humps here. One, you've got to show clear error. In so far as there was a finding. And two, ultimately, that it was an abuse of discretion. And it seems to me that may be particularly a problem here because 801 D one B, not only talks about rebutting and express or implied charge of recent fabrication, but also allows the prior consistent statement in to rehabilitate the declarants credibility as a witness. When attacked on another ground. So it seems to me there are three hurdles you have here. One, the finding by the trial court. Was it clearly erroneous as to motive to recently fabricate the second is ultimately the abuse of discretion. And the third is the altogether independent grounds of rehabilitate rehabilitating the declarants credibility, which had been very amply and very well attacked by you on cross, how do you get over those three hurdles. Thank you. So just I think it was clear error because by the witnesses own admission, she was lying when she spoke to the police. So for the court to make the finding that the motivation to lie arose later is contradicted by the witness testimony she lied about her name. She lied about the number of robberies. She omitted who she was with at the time of the crash. She lied that she had never broken the law before and she lied about acting under duress. So right there you have five distinct areas where the witnesses saying I'm lying. And this claim that it was Proctor comes after that now prior, but after that. As far as abusive discretion. It isn't abusive discretion, just because in essence, this is a hearsay statement that should not have been admitted that was allowed to be brought in to bolster the credibility of the witness, which is not what the goal is. And I would certainly remind the court of the 1995 United States, the United States Supreme Court opinion of Tony, which is the rule speaks of a party's rebutting an alleged motive, not bolstering veracity of the story told. So the question that becomes what did they were but by showing that she previously named Proctor does that were but that she claimed she was under duress. Does it rebut that she lied about her name. Does it rebut that she lied about the number of robberies are admitted that another blackmail was present at the time of the crash. No, it doesn't do any of those things. It doesn't rehabilitate the witness for the claimed lie. It furthers the prosecution's theory which is she's always named it's him, but that wasn't challenged. And as far as the court's last question is sort of the sub 801 d one b two that's now post 2016 been entered. First, I don't think the government argued that when they argued create though they argued recent fabrication of I, but nonetheless the sub two deals with faulty memory or general inconsistency. And again, judge, I asked, what is the consistency. What is the substance of the statement, they tried to rehabilitate her with so they brought up in their response brief and I'm sure government's counsel talk about this, that at one point she said that during the robbery. The gunman was wearing a black hat. And then we showed on the video, he wasn't wearing a hat at all. So she was lying and I sarcastically said faulty memory. And then she said that Proctor had filled out a document in handwriting that we ultimately showed that she filled out in handwriting so she was lying about that. And that she had sent an email of profanity laced disparaging comments showing she had ill will towards Proctor, none of those things were rehabilitated by bringing in a prior statement that she named it was him. The prior statement didn't address the black hat. The prior statement didn't address the handwriting issue. It didn't address this profanity email, none of the substantive attacks through the cross examination were ever rebutted by the prior statement that I said it was him. I admitted she always said it was him, but she was lying from the beginning, and therefore, that lie shouldn't have been bolstered with the prior statement, which is now coming in, ultimately, by the prosecution substantively being argued again and again that in essence repetition equals reliability, and that's the biggest problem I had with it and that's why I think it was abusive discretion and that it's reversible. Judge as far as the court gave a limiting instruction that said that this should only be used for credibility and not so Mr Lewin I don't mean to cut you off on that I'm happy to hear that. But you don't have a lot of time left and I'd be real interested in hearing your thoughts on whether the district court error in concluding that the Hobbs act robbery conspiracy was a single object conspiracy, rather than a multiple object conspiracy and even assuming that that was error and it may well have been at least from where I sit. Why wouldn't that error have been harmless under the circumstances. So just thank you for giving me an opportunity to address that. I spent a lot of time wrestling with this issue and I went back and I reread the sentencing transcript again and let me say this. I think it was a multi object conspiracy and not a single object conspiracy and I think under one beat to that the. The notes note three specifically describes this situation that's directly analogous to this case where you have multiple distinct and separate robberies here robberies happening in different states. I'm sorry. Okay. And you don't have one continuing single act, but I think my analysis as to whether or not that prejudiced my client is flawed. I think ultimately I had it in my head that if the court did not make findings that the multi object was proven beyond a reasonable doubt, then the court couldn't then consider under 1.13 whether those same acts were relevant conduct and therefore it would limit the sentencing enhancements. And I think that's an error because then ultimately the defendant benefited from not having the grouping points that were brought in by it being a multi object conspiracy and only being sentenced as a single object conspiracy. And ultimately, when I read through the sentencing memorandum, excuse me, transcript and I see what judge Ruiz announced regarding coming up with the same sentence under 3553 a factors, and I consider the case law that the government sites regarding USV over street and specifically US be keen. It seems like it would be harmless error and I have to concede that but I still think the analysis was flawed in sense that This was not a single object conspiracy. I think it's a multi object conspiracy and the court should have had to go through additional findings, but even if the court acquitted the defendant of some of those collateral Substantive crimes, which I would have argued should have occurred. And I think may have occurred. I don't know that the court would have been precluded from then finding relevant conduct would still allow those factors and for sentencing purposes and ultimately he did make those findings. Right. I mean, he went through the analysis to relevant conduct and ultimately said That it was in furtherance of this. These crimes that he was adding these things in under 1.1 point three. So I hope that answers the court's question because I think Thank you. Absolutely. There's the only other thing I if the court with it. I see a bit of my time, but I wanted to get into was in the redirect examination. In addition to the prior consistent statements. The court let in evidence of prior domestic violence acts under the power dynamic between this couple. And I just want to point out this is one more instance where what the government Used to try and rehabilitate the witness failed to rebut the claim that she had always been lying and was specifically lying about being under duress. If this court would have recognized that she couldn't be under duress if she pled guilty and clearly I think that's the case, then showing that two weeks prior to the conspiracy charge my client strangled her and an act of domestic violence. Um, I think you're getting should have been prohibited. In your time is up. That was ground three. But, Judge prior I agree my time is up and I thank you. I thank you for your consideration. Thank you. Mr. Rosa. Good morning, may it please the court, Philip to Rose on behalf of the United States. Frankly, there's not much that I can add to the government's brief regarding the district courts evidentiary rulings. So, unless the court has any specific questions about the, those issues I'd like to spend my time discussing the nature of the conspiracy and its effect on Proctor sentence. Can I ask you an operational question about the 801 about the 801 issue. Given the language of the rule, you know that the purpose is to rebut and express or implied charge that the declarant recently fabricated a statement. Do we care about. Temporally, do we care about when the actual motive to lie arose, or when the cross examiner alleges that the motive to lie arose. What's, what's the, what's the focal point of our inquiry. I think the case law makes it clear that before evidence as evidence of a prior consistent statement can come in to rebut and express or implied charge of recent fabrication, it has to be before the motive to fabricate a road so there has to be. Yeah, so we're on the same page. Hold on one sec just so we're on the same page. Do you mean before the, the motive to lie actually arose or before the motive to lie, allegedly arose, according to the cross examiner, that's my question. I think it has to be actually because, you know, the court has to make a finding that's subject to an abuse of discretion. So it's a function of the actual motive, not not what the defense attorney has alleged and I think it's important to see why because the whole fallacy of Mr. Lewin's argument, he said that well, she was lying all along, and that's a little bit misleading because she told the lies that she told from the beginning were lies about herself in her attempt to mitigate her culpability. She was consistent from the very beginning that Mr. Proctor was her co defendant and he committed these acts with her so she wasn't lying all along when it came to his participation. And that's why it's important to find the actual temporal beginning of the motive to lie, which was the plea agreement. And of course Mr. Lewin knew that that's why he cross examined her about the plea agreement and he said aren't you just implicating him because you have a plea agreement with the government. See, I guess I would have thought that you might say, no, the focal point is when Mr. Lewin alleged that she developed a motive to lie and that was the plea agreement and the statements in the field and at the hospital predated that so they're in. But if the focus is the actual motive to lie, then maybe Mr. Lewin says she had a motive to lie from the very beginning. I mean like who are we kidding she got caught in a field. In this case I'm not following the distinction between the allegation of when the motive arose and when it actually arose, they're the same it's the plea agreement. So, in this case I don't really see the distinction between the allegation and the actual temporal birth of the motive to lie. Okay, I'll leave it alone. And my brief is not particularly helpful about the Hobbs act conspiracy. And it's because I've come to the conclusion that Mr Lewin is correct in this case in preparing for this oral argument, it dawned on me that this case is a multi object conspiracy and my argument to the contrary, my was incorrect. And when my when I wrote my brief I focused on the way the government charged the offense but I don't think that the object of conspiracy is a function of the government's charging decision. Hobbs act conspiracy, either is or is not a single object conspiracy or a multi object conspiracy, independent of the way it's charged. And one test is as simple as this. I think if a Hobbs act robbery conspiracy involves more than one robbery it's a multi object conspiracy. And that's what we have in this case. We have six robberies including a carjacking. So the district court should have treated the conspiracy as a multi object conspiracy. And in that respect, the alternative argument in my brief now becomes my featured argument since the feature argument was incorrect. And that is that despite the fact that the district court treated as a single object conspiracy the court correctly sentenced the defendant. And I, I'm not sure that I need to get into the nuts and bolts of that now I'll be happy to, if you want me to, but it seems like Mr. Lewin has all the conceded that at least if the court wasn't correct. There any error that the court. Any error that resulted was harmless. I think the court got it correct. And if you're interested in Mr de Rosa just speaking for myself. I think Mr Lewin was straight, clear and candid with this court, and said he's not arguing on homelessness he concedes that the era was harmless in this case so I don't know that you really have to. We're talking about two different things. Happy to hear whatever you want to say about it but I, I did want to say that I read and heard Mr Lewin to be quite clear about his concession on homeless era. Yes, sir. And I think what we're talking about is two different things here. He's talking about whether the court made a mistake in characterizing the Hobbs that conspiracy as a single object conspiracy, we both agree that the court was wrong. He says that the application to sentencing resulted in harmless error, that's not correct in my opinion. There's no harmless error because there's the court, although it made the error in characterizing conspiracy sentenced. Mr Proctor correctly, no error in the sentencing, because of ways. So just so I'm clear you just said, I mean it sounds like I think we have raging agreement here but it seems like you're insisting on disputing that I mean I think you both agree, there was error, you both agree, it was harmless, shouldn't we just move on to something else. Let's leave it at that then your honor. If you don't have any questions about it I don't have anything else to say about these issues. Speaking for myself Mr DeRosa that seems to me to answer the question. He has conceded, he's not arguing that there's any problem with the sentence, other than the academic question, and he and you are in agreement about that, and it seems to me, you're The court has no other questions. Thank you for your time. Thank you, Mr DeRosa, Mr Lewin rebuttal. Thank you, Judge. Judge, I just want to go back and consider some of the language that the majority used in the Tomei opinion, where they talk about, there's an implicit charge of fabrication that's always present when a witness is cross examined. But my fear, and what the, I think what the court addresses there is a fear of opening the floodgates, which is that if every introduction of a prior statement to rebut an implicit charge of the witness testimony was tainted by motive to lie, the whole emphasis of the trial could shift to out of court statements rather than in court statements. And obviously, you know, when a defendant goes forward to trial, he inherently puts his intent at issue, but I don't think we can put the testifying witness in the same posture where if they're cross examined, their motive to lie has been questioned in a way that every prior statement can come in. It has to do with the consistency. It has to do with the consistency of what they're being impeached about. And here, I think Judge Newsom was right that there is this temporal problem in the sense that she's lying from the beginning. As to what she's lying about, like, I'm only going to lie about myself and minimize for me, but I'm telling the truth about him. The problem with that proposition is that you have to overcome the square finding of fact made by the trial court in this case. It's not as if we had no finding by the trial court about the temporal question. Rather, you have here an express finding of fact by the trial court that the motive to lie was triggered by and occurs at a temporal time when the plea agreement is struck. He finds expressly that when she made those statements, when, in his words, she was lying in a ditch, she didn't have a motive to lie about Proctor's involvement at that point, and that the motive arose later. So you've got to say that that finding of fact was clear error, don't you? I think it was, though, Judge, because it's entwined in other lies. So it's not just a theory. You have to agree that if it wasn't clearly erroneous for the district court to make that finding, you lose on this point, don't you? Correct, because if it was the plea that triggered the motive to lie, then it would be a prior statement. I agree with that. Although I don't know that it'd be consistent because, again, at no time did anyone say she lied to the police about saying it. It's just about whether or not that was true. The district court said no motive to lie at the outset when she implicated Proctor. Maybe there was a motive to lie later when she struck the deal, but not originally. That's basically what the trial judge said, wasn't it? Yes, I think so. But again, I think the court was in error for the main reason that the statement that she previously named it was Proctor didn't rebut any line of attack that was brought to her. We showed that she lied about many, many things. Although we suggested she was lying about who she did the crime with, we never suggested that she lied about saying that. We just said at that time that she said it, she was lying about many things. But that shouldn't open the door to all these prior statements where now all of a sudden the repetition comes in to taint the jury. And I see my time is up, so I'll end with that. And I appreciate the court giving me additional time and the opportunity to argue before you. Thank you. Thank you, Mr. Lewin. The court notes that you are court appointed and we thank you very much for your able service.